UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| APRIL C. O., | Case No. 6:19-cv-01697-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Plaintiff April C. O.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and all parties have consented to jurisdiction by magistrate judge

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

Page 1 – OPINION AND ORDER

in accordance with 28 U.S.C. § 636(c). For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

*Procedural Background*

On August 12, 2015, Plaintiff protectively filed an application for a period of disability and disability benefits, alleging disability beginning November 26, 2014, due to polymyositis with fasciitis, depression, anxiety, type 2 diabetes, insomnia, morphea, psoriasis, acid reflux, and high cholesterol. Tr. Soc. Sec. Admin. R. ("Tr.") 396-97, ECF No. 9. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on August 28, 2018, at which Plaintiff appeared with her attorney and testified. A vocational expert, Kimberly Mullinax, also appeared and testified at the hearing. On October 22, 2018, the ALJ issued an unfavorable decision. Plaintiff sought review by the Appeals Council and submitted additional evidence in support of the appeal. Tr. 1-2. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1974, was thirty-nine years old on the alleged onset date of disability and forty-three years old on the date of the ALJ's decision. Tr. 360, 396. Plaintiff obtained a GED, completed some college, and has past relevant work as an eligibility worker, teacher for the mentally impaired, and childcare attendant. Tr. 360, 926.

*The ALJ's Decision*

The ALJ determined that Plaintiff meets the insured status requirements through December 31, 2019, and at step one, found that she has not engaged in substantial gainful employment since her alleged onset date of November 26, 2014. Tr. 354. At step two, the ALJ determined that Plaintiff has the following severe impairments: polymyositis, obesity, mild carpal tunnel

Page 2 – OPINION AND ORDER

syndrome status post release, major depressive disorder, and posttraumatic stress disorder ("PTSD"). Tr. 360. At step three, the ALJ determined that Plaintiff's severe impairments did not meet or equal any listed impairment. Tr. 19. Reviewing all the evidence in the record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work, with the following additional limitations: she is limited to frequent handling and fingering; can perform simple, repetitive tasks with a reasoning level of two or less; may have occasional, superficial contact with the public, supervisors, and coworkers; and requires a routine, predictable work environment with no more than occasional changes. Tr. 356.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Tr. 360. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as assembler and cleaner/housekeeper. Tr. 361. Therefore, the ALJ found that Plaintiff was not disabled from November 26, 2014, through the date of the decision and denied Plaintiff's application for disability benefits. Tr. 361.

*Issues on Review*

Plaintiff argues the following errors were committed: (1) the ALJ improperly evaluated the opinions of treating physician Rebecca Callis, M.D., and examining physician Seth Williams, Psy.D.; and (2) the non-disability determination is unsupported by substantial evidence when the evidence submitted to the Appeals Council is properly considered.

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Substantial evidence is

Page 3 – OPINION AND ORDER

"more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009. "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). When a claimant submits new evidence to the Appeals Council, the court must consider whether that new evidence, in the context of the record as a whole, undermines the ALJ's non-disability determination. *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012).

*Discussion*

I. <u>Medical Opinion Evidence</u>

    *A.*    *Standards*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); 20 C.F.R. § 404.1527. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will

Page 4 – OPINION AND ORDER

be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); *Trevizo*, 871 F.3d at 675 (same); 20 C.F.R. § 404.1527(c).[2] "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675; 20 C.F.R. § 404.1527(c)(2)-(6).

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1012. To meet this burden, the ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

\ \ \ \ \

    B.    Rebecca Callis, M.D.

---

[2] The Court notes that for all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1520c (not § 404.1527) govern. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. § 404.1520c. In this case, Plaintiff filed her claim for benefits in August 2015, well before March 27, 2017. *See* 20 C.F.R. § 404.614 (defining when an application for benefits is considered filed). Thus, the court analyzes Plaintiff's claim utilizing § 404.1527 (providing the rules for evaluating opinion evidence for claims filed prior to March 27, 2017).

Page 5 – OPINION AND ORDER

Dr. Callis was Plaintiff's treating rheumatologist for her myositis and fasciitis, with the record reflecting treatment from November 2013 to March 2018. Tr. 898, 1340. In an October 9, 2017 letter opinion, Dr. Callis opined that Plaintiff should not work because of her "active myositis and upper and lower extremity pain." Tr. 1057-58. Dr. Callis noted that Plaintiff has a history of morphea, skin psoriasis, myositis, and fasciitis, and that she received infusion treatment for her myositis and fasciitis, and was on medications for maintenance. Tr. 1057. Dr. Callis indicated that Plaintiff reports continued pain despite that labs do not track with her myositis and fasciitis, and as a result, she tracks Plaintiff's condition with MRI's. Tr. 1057. Dr. Callis indicated a September 2017 MRI of Plaintiff's lower extremities bilaterally show "mild enhancement of the anterior compartmental musculature of the lower legs bilaterally . . . suggesting mild changes of active myositis. Tr. 1057. Dr. Callis also indicated that a September 2017 MRI of Plaintiff's upper extremities showed "minimal increase in . . . chronic low level myositis of the flexor compartmental musculature in the proximal forearm" compared to September 2015. Tr. 1057. Dr. Callis further noted the remaining findings of Plaintiff's upper extremity MRI showed improvement in the forearm. Tr. 1057.

In the October 2017 opinion, Dr. Callis noted that Plaintiff was referred to the OHSU neuromuscular clinic for further evaluation due to her complaints of worsening arm and leg pain complaints, and because her recent arm and leg pains had not responded to increased doses of prednisone. Tr. 1057. Dr. Callis's opinion further stated that Plaintiff reported worsening arm pains upon typing for fifteen minutes, which symptoms prevent her employment. Tr. 1058. Dr. Callis opined that Plaintiff's primary care physician, Kendall Graven, M.D., informed her that Plaintiff suffers from "debilitating anxiety and depression." Tr. 1058. Dr. Callis stated that Plaintiff's multiple medical conditions exacerbate her anxiety and "limit[] her ability to cope with

Page 6 – OPINION AND ORDER

other stressors such as employment issues." Tr. 1058. Additionally, Dr. Callis completed a disability form for Family and Medical Leave ("FMLA form") indicating that Plaintiff is unable to return to work and in which she opined that as of December 1, 2014, Plaintiff was permanently unable to return to work. Tr. 360, 1055.

In the decision, the ALJ gave Dr. Callis's opinion "little weight" because it was inconsistent with her own treatment records, and because the treatment records reflected that Plaintiff's pain complaints were "out of proportion" to the disease activity. Tr. 359. The ALJ also discounted Dr. Callis's opinion because it relied on Plaintiff's subjective pain complaints compared to Dr. Callis's own objective findings. Tr. 359. The ALJ discounted Dr. Callis's FMLA form for the same reasons. Tr. 360. Because Dr. Callis's opinion was contradicted by those of two agency non-examining physicians, the ALJ was required to provide specific and legitimate reasons for discounting it. *Ford*, 950 F.3d at 1154; *Bayliss*, 427 F.3d at 1216. The ALJ's analysis readily satisfies this standard.

    1.  contradicted by own treatment notes

First, the ALJ discounted Dr. Callis's opinion of Plaintiff's physical impairments, because of the discrepancies between her opinion and her treatment notes. A conflict between treatment notes and a treating provider's opinion may be an adequate reason to discount the opinion. *Ghanim*, 763 F.3d at 1161. "A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes." *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (citing *Bayliss*, 427 F.3d at 1216). Here, the ALJ extensively discussed Dr. Callis's treatment records, noting that after infusion treatment with Rituxan, Plaintiff showed dramatic improvement. The ALJ's findings in this regard are wholly supported by substantial evidence.

Page 7 – OPINION AND ORDER

For example, after Plaintiff's alleged onset date, in a January 2015 treatment note, Dr. Callis observed that Plaintiff has experienced "wonderful improvement" on both physical examination and on MRI, noting that "I cannot find any other inflammatory markers that correlate" to Plaintiff's myositis and fasciitis.  Tr. 871.  In a March 2015 treatment note, Dr. Callis indicated that on a CT scan, a CK test, and aldolase and inflammatory markers, there was no evidence of active disease, and that Plaintiff was on FLMA leave and unable to return to work due to her chronic pain.  Tr. 864.  As the ALJ correctly observed, in September 2015, Dr. Callis's treatment notes reflect that there was no palpable synovitis in her hands, feet, wrists, elbows, ankles, midfoot, and no palpable inflammation, erythema, or tension in the bilateral forearms.  Tr. 357.  And, in November 2015, the Dr. Callis observed that the September 2015 MRI of her upper and lower extremities "show no significant disease activity" and on physical examination, "she has no evidence of myositis or fasciitis."  Tr. 357, 846.

The ALJ also discussed Dr. Callis's 2016 records that showed "no rheumatoid deformities or nodules throughout," and that Plaintiff had 5/5 proximal and distal upper extremity strength to flexion and extension, 5/5 hand grip, with no warmth, tenderness, or erythema about the forearms bilaterally, and no flexion contractures about the knees.  Tr. 358, 1168, 1176.  As the ALJ also observed, Plaintiff complained of bilateral arm pain, but Dr. Callis noted that Plaintiff's arm pain was due to her carpal tunnel, not myositis.  Tr. 1176.  And, as the ALJ correctly observed, Plaintiff underwent successful carpal tunnel release surgery, with "post operative records showing significant improvement."  Tr. 357.

The ALJ also observed that Plaintiff's myositis essentially remained unchanged into 2018, findings that are wholly supported by substantial evidence.  For instance, in May 2017, Dr. Callis's treatment notes reflect that Plaintiff's myositis and fasciitis are reflected on MRIs only,

Page 8 – OPINION AND ORDER

and that in September 2017, she would consider "weaning off immunosuppression since she has not had any more muscle pain or fascial pain about the upper extremities or lower extremities or hear or swelling about her forearms now for almost 2 years." Tr. 1304. In December 2017, just two months after the opinion letter, Dr. Callis's notes reveal that on examination, Plaintiff had no swelling in her joints, no synovitis in her knees, the ability to rise from sitting to standing repeatedly, and a mild neuropathy consistent with her prior carpal tunnel syndrome, status post-release. Tr. 1319-20. Dr. Callis's December 2017 treatment notes reflect that Plaintiff's upper and lower extremity pain complaints were not consistent with her improving MRIs and "very mild myositis activity." Tr. 1321. Finally, and as the ALJ correctly notes, in March 2018Plaintiff's myositis was unchanged, without joint swelling or rheumatic nodules, but "pain out of proportion to disease activity," and that there had been no evidence of rheumatoid arthritis on the MRIs of her upper extremities. Tr. 1341-42.

Based on the multitude of treatment notes showing an absence of significant disease activity and lack of physical examination findings, the ALJ reasonably could find inconsistent with her own treatment records Dr. Callis's 2017 opinion that Plaintiff was unable to work due to active myositis, and the ALJ appropriately discounted the opinion on that basis. These findings are backed by substantial evidence, are a reasonable interpretation of the record, and will not be disturbed. *Ford*, 950 F.3d at 1154 ("A conflict between a treating physician's medical opinion and his own notes is a clear and convincing reason for not relying on the doctor's opinion[.]") (internal quotations and citation omitted). Thus, the ALJ's first reason provides a specific and legitimate basis for discounting Dr. Callis's opinion.

\ \ \ \ \

      2.      premised on subjective complaints

Second, the ALJ found that Dr. Callis's opinion appears based on Plaintiff's subjective complaints. Notably, Plaintiff does not challenge the ALJ's adverse subjective symptom findings. "[A] doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible." *Murray v. Comm'r Soc. Sec. Admin.*, 226 F. Supp. 3d 1122, 1135 (D. Or. 2017); *Bray*, 554 F.3d at 1228; *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (2004). As detailed above, the ALJ thoroughly discussed that Plaintiff's myositis has been well controlled with medication since 2015, and the inconsistency between Plaintiff's complaints of pain and the clinical findings. The ALJ specifically noted that Dr. Callis's treatment notes reflected that Plaintiff's post-surgical arm pain was not caused by active myositis and that her physical examination was "not consistent with obvious disease." Tr. 358, 1168. As the ALJ correctly observed, Dr. Callis's own treatment notes reflect that Plaintiff's pain complaints were "out of proportion to disease activity," and that Dr. Callis is unable to correlate her pain with the objective findings. Tr. 359; 1321, 1341. Substantial evidence firmly supports this finding, as Dr. Callis's treatment notes repeatedly reflect that Plaintiff's pain complaints are not explained by the objective findings. *See, e.g.*, Tr. 1321 ("Honestly not sure why she is still having [chronic upper and lower extremity pain.] Myositis often causes more weakness as compared to muscle pains.")

Relying on *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1196 (9th Cir. 2008), Plaintiff argues that the ALJ erred in discounting Dr. Callis's opinion because Dr. Callis did not discount Plaintiff's pain allegations. Plaintiff contends the ALJ was required to defer to Dr. Callis's opinion that she is disabled by exhaustion, chronic pain, depression, and anxiety, and that employment would worsen her medical condition and cause further limb pain. (Pl.'s Br. at 15.)

*Ryan* is distinguishable. There, the court determined that "ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan*, 528 F.3d at 1199-1200. Unlike *Ryan,* here Dr. Callis did question the etiology of Plaintiff's pain complaints. As the ALJ correctly observed, after the October 2017 opinion letter, Dr. Callis specifically indicated in her March 2018 treatment notes that Plaintiff's pain was "out of proportion to disease activity." Tr. 358, 1341. As the ALJ discussed, despite Dr. Callis's treatment notes revealed "mild disease activity," "full grip strength and ability to easily rise form a chair." Tr. 358, 1320-22 (December 20, 2017 treatment notes). Reviewing Dr. Callis's treatment notes following the October 2017 opinion, the court readily concludes that the ALJ reasonably determined that Dr. Callis premised her opinion on Plaintiff's subjective reports of pain, and appropriately discounted it on this basis.

The appropriateness of the ALJ's interpretation is further underscored by Plaintiff's failure to challenge the ALJ's assessment. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a . . . physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (citation omitted)*; Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (internal quotations and citation omitted); *Jorgensen v. Colvin*, Case No. 15-cv-0042-FVS, 2016 WL 1060252, at *4 (E.D. Wash. Mar. 15, 2016) (upholding ALJ's rejection of physician's opinion premised on subjective complaints where adverse credibility determination is unchallenged); *Crowley v. Comm'r Soc. Sec. Admin.*, No. CV-18-0561-TUC-BGM, 2020 WL 2782569 (D. Ariz. May 29, 2020) (stating that

Page 11 – OPINION AND ORDER

ALJ could discount physician's opinion premised on properly discounted subjective complaints). Therefore, the court concludes that the ALJ has provided a second specific and legitimate basis for discounting Dr. Callis's opinion.

With respect to Dr. Callis's FMLA form, the ALJ rejected the opinion for the same two reasons. See Ford, 950 F.3d at 1155 (finding ALJ properly discounted physician opinion when contained in check-off report that failed to provide support for limitations). Thus, the court finds the ALJ appropriately discounted the FMLA report.

Although Plaintiff suggests an alternative interpretation of the evidence, the ALJ's interpretation is reasonable, backed by substantial evidence, and will not be disturbed. Ford, 950 F.3d at 1156 (holding that "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation") (citing Tommasetti, 533 F.3d at 1038). Accordingly, the ALJ provided two specific and legitimate reasons for giving Dr. Callis's opinion less than controlling weight; the ALJ did not err.

C.  Seth Williams, Psy.D.

Dr. Williams performed a psychological assessment on January 27, 2016. Tr. 924. He reviewed some counseling records and some records from Dr. Callis. Tr. 924. His report documents Plaintiff's complaints of severe depression, difficulty regulating her emotions at work, difficulty sleeping, and experiencing issues with her memory. Tr. 925. His report also notes Plaintiff stated she is independent in all self-care, can perform household tasks, can pay her bills and manage her finances, and can travel independently. Tr. 927. He reported that she "wailed" and "sobbed" during the interview, but that her "emotionality receded entirely" while performing tasks requiring concentration and attention. Tr. 928. Dr. Williams also noted that Plaintiff's reporting was difficult to follow, that she denied hallucinations or delusions, was without suicidal

ideation, that her affect was "bereft," and that her mood would not allow her to "fit in at most settings." Tr. 928. Upon testing, Plaintiff completed two parts of a three-part command; could remember six digits forward and five backward; had a full fund of knowledge; performed serial sevens quickly and without error; understood abstract proverbs, similarities, and differences; and could use ethical and pragmatic reasoning to problem-solve. Tr. 928-29. He diagnosed PTSD and major depressive disorder. Tr. 929.

Dr. Williams observed that Plaintiff's "emotional dysregulation during the interview was extreme" and that "although her testing did not indicate significant impairment, her emotional dysregulation would not allow her to work." Tr. 930. Dr. Williams further opined that she be considered impaired for mental health reasons at the current time, and he recommended that she be evaluated again in "twelve months to see if continued psychotherapy and more time to cope with her medical challenges will allow her to function better mentally." Tr. 930. Dr. Williams also opined that Plaintiff would not have any difficulty performing simple, repetitive tasks or detailed and complex tasks, but would have some difficulty remembering and acting on instructions from supervisors. Tr. 930. Dr. Williams stated that Plaintiff would have difficulty interacting with coworkers or the public, performing work activities without individualized instruction, and would have difficulty maintaining regular attendance and maintaining a normal workday or workweek without interruptions from her psychiatric conditions. Tr. 931.

For three primary reasons, the ALJ gave "little weight" to Dr. Williams's opinion that Plaintiff would have difficulty interacting with others, performing work activities, remembering instructions, and maintaining regular attendance: (1) it was inconsistent with Plaintiff's activities of daily living; (2) it was inconsistent with Plaintiff's medical improvement with treatment; and (3) it was inconsistent with the longitudinal medical record. Because Dr. Williams's opinion was

Page 13 – OPINION AND ORDER

contradicted by those of two agency non-examining physicians, the ALJ was required to provide specific and legitimate reasons for discounting it.  *Ford*, 950 F.3d at 1154; *Bayliss*, 427 F.3d at 1216.  A careful review of the records shows that the ALJ failed to provide adequate reasons to discount Dr. Williams's opinion.

The ALJ's first rationale is inadequate.  The ALJ rejected Dr. Williams's opinion because Plaintiff can engage in a "robust slate of activities of daily living" such as caring for pets, doing laundry, driving, shopping, reading, and spending time with others.  Tr. 359.  But the ALJ does not explain how Plaintiff's ability to perform minimal activities in her home on her own schedule is inconsistent with Dr. William's opinion that she cannot maintain attendance to complete a normal workday or workweek, and that she would have difficulty interacting with coworkers and the public due to her extreme emotional dysregulation.  See *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (holding ALJ erred in discounting examining physician's opinion based on claimant's activities of daily living).  Plaintiff's ability to do laundry, care for her pets, perform household chores with assistance, and interact with her husband and grown children does not establish that she can maintain regular attendance for eight hours a day, five days a week.  *Id*.  Moreover, Plaintiff described to Dr. Williams that she spends most of her days watching television and is "useless."  Tr. 927.  Thus, the court finds that the ALJ's first reason fails to provide a specific and legitimate basis for discounting Dr. Williams's opinion.

The ALJ's second rationale is not fully supported by substantial evidence.  The ALJ found that Dr. Williams's assessed limitations are inconsistent with Plaintiff's improvement with treatment.  A medical opinion's inconsistency with the objective medical record may constitute an adequate reason to discredit that opinion.  *Tommasetti*, 533 F.3d at 1041.  Here, the ALJ found that Plaintiff improved with mental health treatment and medication, that the treatment notes reveal

Page 14 – OPINION AND ORDER

"excellent recovery," and that her course of treatment "is incongruent with persistent, significant mental illness." Tr. 358-59.  For example, as the ALJ detailed that in February 2016, Plaintiff reported to her therapist that "her depression has been pretty good" and that she was using her coping skills when at home, but forgetting to use them in more stressful situations.  Tr. 359, 1009.  On March 1, 2016, Plaintiff reported to Dr. Graven that her depression improved upon seeing a counselor.  Tr. 933.  In June 2016, Plaintiff's therapist observed her affect to be bright and that she reported using her coping skills.  Tr. 993.  As the ALJ correctly indicated, in June 2016, Plaintiff reported doing well, having very few depressive and anxiety symptoms, diminished conflict with her husband, and travel to the beach with her family for a few days.  Tr. 991.  And, as the ALJ correctly noted, the record also contains numerous visits with providers where she made no psychiatric complaints.  Tr. 648, 651, 676, 682, 689, 846, 856, 892, 895, 956, 982, 1186-1201.

However, the record also reflects numerous notations of Plaintiff struggling with her anxiety and depression.  Tr. 933.  For example, in April 2016, Plaintiff reported an urge to self-harm.  Tr. 998.  In May 2016, Plaintiff was increasingly tearful with her therapist when talking about conflict with her husband.  Tr. 995.  And, in May 2016, Plaintiff had a difficult week because she was trying to get off oxycodone, and she was tearful.  Tr. 996.  In October 2017, Dr. Callis reported that she spoke about Plaintiff to Dr. Graven, who noted that Plaintiff had improved with treatment but not enough to allow him to recommend employment.  Tr. 1058.  Contrary to the ALJ's findings that Plaintiff made "excellent recovery," the medical record presents a more mixed picture.  Thus, the ALJ's second rationale is not fully supported by substantial evidence and consequently fails to provide a specific and legitimate basis for discounting Dr. Williams's opinion.  Garrison, 759 F.3d at 1013-14 (providing that ALJ failed to appropriately analyze opinion evidence concerning claimant's mental health).

Page  15  – OPINION AND ORDER

The ALJ's third rationale – that Dr. Williams's opinion is not consistent with the longitudinal record – is not backed by substantial evidence in the record as a whole. Plaintiff submitted additional evidence to the Appeals Council demonstrating that she continued to engage in weekly therapy sessions into 2018, contrary to the ALJ's decision. Plaintiff submitted two years of weekly therapy notes from Marla Moreno, LPC. The newly submitted evidence fails to support that Plaintiff demonstrated "excellent improvement" on a sustained basis, but instead shows that she experienced waxing and waning symptoms of anxiety and depression. *See, e.g.,* Tr. 34, 41, 48, 53, 57, 67, 80, 87, 104, 111. Thus, the longitudinal record of Plaintiff's mental health fails to provide a specific and legitimate basis for discounting Dr. Williams's opinion that she is able to maintain regular attendance and complete a normal workday and workweek. *Ghanim*, 763 F.3d at 1161-62 (noting that occasional periods of improvement must be viewed in context of overall diagnostic picture).

Finally, based only on the ALJ's personal observations at the hearing, the ALJ appeared to partially reject Dr. Williams's opinion of Plaintiff's emotional dysregulation. Tr. 359. The ALJ found Plaintiff's ability to concentrate during the hearing and compose herself after a brief episode of tearfulness demonstrated that her emotional dysregulation had improved. Tr. 359. This rationale fails to provide a specific and legitimate basis for discounting Dr. Williams's opinion, which was based on observations in a clinical setting and objective testing. *See Talbert v. Comm'r Soc. Sec. Admin.*, Case No. 18-cv-05218-SI, 2020 WL 1139585, at *17 (N.D. Cal. Mar. 9, 2020) (holding ALJ erred in rejecting physician's own opinion based on his own observations of claimant at hearing) (citing *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985)).

In summary, because substantial evidence does not support any of the reasons provided by the ALJ to discount Dr. Williams's opinion, the ALJ has committed harmful error.

Page 16 – OPINION AND ORDER

III.     Evidence Submitted to Appeals Council

"When the Appeals Council considers new evidence in deciding whether to review decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes*, 682 F.3d at 1163.[3]

Plaintiff argues that remand is necessary because the newly submitted evidence undermines the ALJ's nondisability decision.  Plaintiff submitted 326 pages of weekly counseling treatment notes from Plaintiff's therapist, Ms. Moreno, covering the period July 2016 through May 2018. Tr. 28- 346.  Plaintiff contends the evidence submitted to the Appeals Council demonstrates the ALJ's rejection of Dr. Williams's opinion is not supported by substantial evidence, making remand necessary.  The Commissioner counters that Ms. Moreno's records do not undermine the ALJ's conclusion that Plaintiff's depression improved with treatment and that she suffered no significant mental illness.

The court agrees with Plaintiff that the new evidence shows the ALJ's rejection of Dr. Williams's opinion is not supported by substantial evidence.  As Plaintiff correctly highlights, contrary to the ALJ's findings, she did not end mental health treatment in 2016, but continued to undergo weekly counseling throughout the relevant period.  Additionally, as noted above, contrary to the ALJ's findings, the longitudinal record reveals that Plaintiff's mental health is more mixed, with periods of improvement and later regressions.  Broadly, Ms. Moreno's treatment

---

[3] Here, the Appeals Council listed the additional evidence in its decision and found "this evidence does not show a reasonable probability that it would change the outcome of the decision."  Tr. 1-2.  It then stated that it "did not exhibit this evidence."  Tr. 2.  However, the evidence became part of the administrative record.  Tr. 23-348.  The parties do not dispute that the court should consider this evidence consistent with *Brewes*.  Pl.'s Br. at 16; Def.'s Br. at 12.

notes reflect that Plaintiff persistently reported her depression at a "5" on a 10-point scale. Therefore, in light of the error in assessing Dr. Williams's opinion, the court concludes that Ms. Moreno's notes submitted to the Appeals Council further demonstrate that the ALJ's rejection of Dr. Williams's opinion is not supported by substantial evidence in the record as a whole. Therefore, the ALJ has erred and remand is appropriate. *Brewes*, 682 F.3d at 1162.

IV.     Remand for Further Proceedings

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: whether, if remanded, the ALJ must award benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

Plaintiff argues that an award for an immediate payment of benefits is required because when the opinion of Drs. Williams is properly credited, the vocational testimony elicited at the hearing establishes that she is unable to sustain competitive employment. The Commissioner contends that remanding the case for further proceedings and not an award of benefits is appropriate, because there is serious doubt that Plaintiff's impairments are disabling. The court concludes that remand for further proceedings is necessary.

Page 18 – OPINION AND ORDER

The court declines to credit Dr. Williams's opinion evidence as true because there are numerous outstanding issues that must be resolved before a proper disability determination can be made, and it is not clear that Plaintiff is disabled. *Dominguez*, 808 F.3d at 407. First, the ALJ has not had an opportunity to review the counseling records from Ms. Moreno. This evidence shows that Plaintiff continued mental health therapy into 2018, as she attested at the hearing. The ALJ rejected Plaintiff' testimony in part because the record did not support her assertion that she continued therapy after 2016. Tr. 358. The ALJ also partially rejected Dr. Williams's opinion based on the longitudinal record of her mental health, a determination that may be altered based on review of the new evidence which showed that she continued to express depressive symptoms. The ALJ should have the opportunity to review Ms. Moreno's records and determine whether they affect the evaluation of the Plaintiff's testimony and of Dr. Williams's opinion.

Second, Plaintiff testified that her primary impediment to working was her physical impairments, including arm and leg pain, and that her anxiety and depression do not affect her "so much as the physical stuff." Tr. 358, 387. And, the court determined that Dr. Callis's opinion is readily supported by substantial evidence, which evidence included Plaintiff's rejected subjective complaints. Plaintiff did not challenge the ALJ's assessment of her subjective symptom testimony. Thus, conflicts in the evidence must be resolved before a disability determination can be made.

Third, in October 2017, Dr. Callis noted that Dr. Graven believed Plaintiff could not sustain employment due to her depression and anxiety. Tr. 1058. But the voluminous record before the court contains no opinion evidence from Dr. Graven, no treatment notes from Dr. Graven reflecting a disabling level of impairment, and no treatment notes from Dr. Graven dated after November

2017. For all these reasons, the court exercises its discretion and declines to credit Dr. Williams's opinion as true. Accordingly, remand for further proceedings is appropriate.

On remand, the ALJ should review the evidence submitted to the Appeals Council, obtain additional treatment notes from Dr. Graven, re-evaluate the medical evidence in the record, supplement the record as necessary, and afford Plaintiff an additional hearing with vocational testimony, if desired.

## Conclusion

Based on the foregoing, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision REVERSED and REMANDED for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 23rd day of December, 2020.

JOHN V. ACOSTA
United States Magistrate Judge